WORLDWIDE COMMODITIES, INC. *vs.* J. AMICONE
COMPANY, INC.

No. 92-P-595.

Middlesex. October 15, 1993. - March 31, 1994.

Present: DREBEN, FINE, & GILLERMAN, JJ.

*District Court*, Appellate division. *Consumer Protection Act*, Interstate
transaction. *Contract*, Performance and breach, Choice of law clause.

A draft report under Dist./Mun.R.Civ.P. 64 should not include the tran-
script of the proceedings. [306-307]
In an action for breach of an exclusive brokerage agreement for sales of
certain goods, the District Court judge correctly ruled that the particu-
lar sales in question were covered by the parties' brokerage agreement.
[307]
A choice of law clause in a commercial contract, specifying the laws of
New York, barred application of G. L. c. 93A to a claim for breach of
the contract [307-308], and where the record did not present the issue
of whether New York provides a similar remedy, the recovery under
G. L. c. 93A was reversed, including the award of attorney's fees [307-
308].

CIVIL ACTION commenced in the Malden Division of the
District Court Department on January 20, 1987.

The case was heard by *James W. Killam, III*, J.

*Danielle E. deBenedictis* for the defendant.

*Kathleen M. Curry* for the plaintiff.

DREBEN, J. In 1983, the defendant, J. Amicone Company,
Inc. (Amicone), a manufacturer of syrups, icings, and other
food products, appointed the plaintiff, Worldwide Commodi-
ties, Inc. (Worldwide), a New York corporation, as its exclu-
sive agent for the distribution of certain of its goods[1] in New

---

[1]The contract included: "(a) syrups, extracts, flavors, emulsions, yogurt
preserves (fruits), purees, ice cream toppings, and variegates; (b) pie,
cookie and donut fillings; (c) pure jams and jellies; (d) pastry fillers and
donut spreads; (e) cake, muffin, cookie and donut mixes whether dietetic or

York, New Jersey and Pennsylvania. Amicone agreed not to sell directly or through others such goods in the described territory, and in the event that it did, Worldwide was to receive the same commissions as if Worldwide had made the sales. After discovering that, contrary to the agreement, Amicone had made a number of sales in its exclusive territory, Worldwide brought an action in the District Court alleging a breach of contract and also alleging that such breach constituted a violation of G. L. c. 93A. A District Court judge found for Worldwide. On the contract claim, that is, the claim for commissions, Worldwide was awarded $51,440.44 plus interest and on the c. 93A claim, $102,880.88 plus interest, as well as attorney's fees of $9,975.

Amicone appealed to the Appellate Division pursuant to Dist./Mun.R.Civ.P. 64 (1975). Among other contentions, it claimed: (1) that c. 93A did not apply, both because the parties had agreed that their contract was to be governed by New York law,[2] and because the alleged actions forming the basis of the c. 93A claim did not occur "primarily and substantially within the commonwealth" as required by G. L. c. 93A, § 11, as amended by St. 1986, c. 363, § 4; and (2) that the contract did not apply to the most significant portion of Worldwide's claims for unpaid commissions, that is, to Amicone's sales to Mallet & Company.

The Appellate Division held that the sales to Mallet were covered by the agreement, and, with one judge dissenting, that c. 93A was applicable to the controversy. Finding, however, that the award of damages was duplicative, the Appellate Division limited the damages to double the contract claim. We affirm the judgment insofar as it awards damages

not; (f) bases, powders, creams and icings; (g) oven proof and low calorie fillings and fruit butter; manufactured or offered for sale by the Company, its parent, subsidiaries, or affiliated companies and any other products about which the Company may advise Broker in writing . . . ."

[2]Paragraph 9 of the contract provided: "This Agreement is governed by the laws of the State of New York, excluding those relating to conflicts of law."

for breach of contract, but hold that the choice-of-law provision, see note 2, *supra*, bars relief under c. 93A.

1. We first dispose of a point of procedure. The parties have included in the record a transcript of the proceedings in the District Court. Such inclusion is not appropriate under Dist./Mun.R.Civ.P. 64, which governs appeals to the Appellate Division. See also G. L. c. 231, § 108. Compare appeals under G. L. c. 40A which proceed from the District Court directly to the Appeals Court. See *Walker* v. *Board of Appeals of Harwich*, 388 Mass. 42, 49-50 (1983).

In order to preserve an objection to a ruling in the District Court on an appeal to the Appellate Division, the objecting party must request a report. Rule 64(c)(1). The report is to contain what is necessary for a "full understanding of the questions presented." Rule 64(c)(2). Requirements for the report are contained in rule 64(c)(2), and are set forth in the margin.[3] Paragraph (c)(2) of the rule continues: "Papers on file in the case may not be incorporated by reference except by permission of the appellate division."

Moreover, rule 64(c)(2) further provides that reports "shall generally, as fully as may be" follow the model of Form 33. That form states: "Except where it is necessary to a question as to the admission or exclusion of evidence, stenographic report of evidence giving question and answer should not be inserted in report, but its substance should be concisely stated in narrative form." See also Dist./Mun.R.Civ.P. 64 (f), which requires parties, when relying on facts or evidence, to refer in their briefs to "the page of the report." Thus, the transcript should not be attached as part

---

[3]The relevant portion of rule 64(c)(2) provides: "Contents of the Draft Report. The draft report shall state the issues raised by the pleadings, shall set forth in clear and concise terms the rulings upon which the party seeking the report has requested and now asks for a review by the appellate division, the state of the case at which and the manner in which the same arose, how he claims to be prejudiced by such rulings and any other facts essential to a full understanding of the questions presented. A written decision or finding and any special findings of fact by the trial justice shall be included in all draft reports, and copies of the complaint or any pleading necessary for the understanding or decision of the questions involved shall be annexed to or incorporated in the draft report."

of the report to the Appellate Division. See Perlin & Connors, Handbook of Civil Procedure in the Massachusetts District Court §12.13 (2d ed. 1990). The appeal before us is from the "final decision of the appellate division," G. L. c. 231, § 109, as amended through St. 1985, c. 314, § 8,[4] and is on the record before that court. Accordingly, the transcript should not be included as part of the record in this court.

2. Amicone claimed that the contract did not cover the invoices to Mallet because it had a special arrangement with that company to use the latter's raw materials, technology, and formulations to make "icing stabilizer" for Mallet. The product, according to Amicone, was Mallet's at all times. As pointed out by the trial judge, and by the Appellate Division, the word "stabilizer" does not appear on the invoices to Mallet, and there is no basis in the record for any conclusion that the sales were of any goods other than icings, powders, etc. "manufactured or offered for sale," see note 1, *supra*, by Amicone. The Appellate Division was correct in ruling that the sales to Mallet were covered by the parties' brokerage agreement.

Assuming that Amicone acted with a "level of rascality" sufficient to find a violation of c. 93A, *Levings* v. *Forbes & Wallace*, 8 Mass. App. Ct. 498, 504 (1979), we conclude that New York law, not the law of Massachusetts, governs Amicone's conduct.

The Appellate Division relied on *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365 (D. Mass 1983), aff'd, 740 F. 2d 59, 67-68 (1st Cir. 1984), in holding that New York law governed the agreement, but not the separate c. 93A claims. In *Qantel*, Judge Keeton concluded that the unfair practices before him were based on misrepresentations analogous to tort claims and held that the c. 93A claim was not barred by a choice-of-law clause which provided that the contract was governed by California law. Subsequent to the decision of the Appellate Division, the United States Court

---

[4]See also that portion of G. L. c. 231, § 109, which provides: "The appeal shall not remove the cause, but only the question or questions to be determined."

of Appeals for the First Circuit in *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F. 2d. 607, 608-610 (1st Cir. 1993), amplified *Qantel's* discussion of the effect of a choice-of-law clause on a c. 93A claim based on a breach of contract. Judge Breyer distinguished *Qantel* by pointing out that the 93A claim in that case was not "in essence, a breach of contract claim, for the plaintiff there did not claim that the defendant *broke* a contract, but rather that the defendant fraudulently *induced* the plaintiff to *form* the contract in the first place" (emphasis original). In *Northeast*, on the other hand, the contract violations were essential elements of the c. 93A claims. As a result, the allegations that the defendant had wilfully or knowingly or with bad motive broken the contract, i.e. had acted with sufficient "rascality" to provide the required elements of a c. 93A violation, did not preclude application of the contract's choice-of-law provision. In the absence of evidence as to the parties' contrary intent, the court construed that provision to govern both the ordinary contractual violations and the more serious "rascal-like" breaches. *Id.* at 610. We find the analysis in *Northeast* persuasive, and conclude that, since the contract violations were at the core of Worldwide's c. 93A claims, the contract's choice-of-law clause bars application of the Massachusetts statute.

As the record does not raise the question whether New York provides a similar remedy, the recovery under c. 93A must be reversed, including the award of attorney's fees. Because of our conclusion that the c. 93A claims are precluded by the contract clause, we do not reach the other challenges to the applicability of the statute.

In reviewing the decision of the Appellate Division, we can enter such order as that court ought to have entered. *Elliott v. Warwick Stores, Inc.*, 329 Mass. 406, 410 (1952). *First Safety Fund Natl. Bank v. Friel*, 23 Mass. App. Ct. 583, 589 (1987). The judgment is affirmed insofar as it awards damages for breach of contract in the amount of $51,440.44,

plus interest, and is reversed insofar as it awards damages and attorney's fees under c. 93A.

*So ordered.*