Lauriat, J.
M.I.L. Electronics, Inc. (“M.I.L.”), brought this action against Matsushita Electric Corporation of America, Inc. (“MECA”) for its alleged violation of G.L.c. 93A, §11, arising from MECA’s failure to buy back M.I.L.’s complete inventory of MECA parts and equipment following MECA’s termination of M.I.L.’s distributorship in February, 1994.
This action was tried to the court, jury-waived, on April 3, 4 and 5, 1995. Upon consideration of the credible testimony of the witnesses and the exhibits presented by the parties, and the reasonable inferences to be drawn therefrom, and upon consideration of the written submissions and the oral arguments of counsel, the court makes the following findings of fact, rulings of law, and order for judgment.
FINDINGS OF FACT
1. In or about 1978, M.I.L. began selling and distributing Panasonic brand electronic parts and equipment to wholesale and retail customers as an authorized distributor for MECA. In order to do so, M.I.L. purchased and maintained an inventory of Panasonic parts and equipment from MECA or its subsidiaries.
2. In 1986, M.I.L. was sold to its current owners. Included in the sale was the then existing inventory of Panasonic parts and equipment.
3. On April 6, 1987, M.I.L. entered into a Distributorship Agreement (“Agreement”) (Exhibit 3) with Matsushita Services Company (“MSC”), a subsidiary of MECA, pursuant to which M.I.L. would sell and distribute Panasonic brand electronic parts and equipment to wholesale and retail customers. The Agreement provided that either party could terminate the Agreement “by written notice to the other to that effect, and in such event termination shall become effective no sooner than thirty (30) days after the mailing of such notice of termination.” Agreement, ¶7.1. The Agreement further provided that MSC “shall have the option at any time at any time upon written notice to [M.I.L.] to that effect, exercised no later than fourteen (14) days after the termination of this Agreement by either MSC or [M.I.L.], to repurchase from [M.I.L.] ... all or any part of [M.I.L.’s] inventory of the Products existing at the time of the effective date of the termination of this Agreement that have been thereto *173 fore purchased from MSC.” Agreement ¶9.1. “Products” shall mean all parts and accessories on all current and future MSC price sheets." Agreement ¶1. The Agreement also provides that “This Agreement shall be deemed to have been executed in the State of New York and shall be interpreted and construed in accordance with, and governed by, the laws of the State of New York.” Agreement, ¶16.
4. Beginning in 1987, MSC instituted several parts inventory return programs for its distributors. (Exhibit 13.) From 1987 until 1994, M.I.L. took advantage of some, but not necessarily all of those programs.
5. By letter dated February 23, 1994, MSC terminated M.I.L. as a distributor, pursuant to paragraph 7.1 of the Agreement, effective April 25, 1994. (Exhibit 1.) M.I.L. did not object to and does not now challenge MSC’s ability or authoriiy to terminate M.I.L. as a distributor. At the time of its termination, M.I.L. had approximately $59,000 worth of Panasonic inventory which it had originally purchased from MSC.
6. By letter also dated February 23, 1994, MSC advised M.I.L. of MSC’s willingness to repurchase certain categories of M.I.L.’s inventory pursuant to a three-phase procedure. (Exhibit 2.) MSC initially repurchased $16,838 in then current Panasonic inventory from M.I.L. After further correspondence, discussions and several reviews of M.I.L.’s remaining inventory, MSC ultimately agreed to repurchase an additional $8,706 in Panasonic inventory from M.I.L. (Exhibits 8, 9, 10, 16 and 17.) MSC repurchased a total of $25,544 in Panasonic inventory from M.I.L., but it declined to repurchase the balance of M.I.L.’s Panasonic inventory.
7. During the summer of 1994, at the urging of several of M.I.L.’s former customers, MECA approached M.I.L. about possible reappointment as a distributor. M.I.L. responded that it would consider MECA’s offer only if MSC first agreed to repurchase all of M.I.L.’s remaining Panasonic inventory. MSC declined to do so.
8. Although M.I.L. ceased to be an authorized distributor of Panasonic brand parts and equipment after April 25, 1994, it was never barred or prohibited by MSC or MECA from continuing to advertise or sell its Panasonic inventory. (See Exhibit 18.) M.I.L. nonetheless for the most part declined to do so. In September of 1994, M.I.L. closed its business. At that time, M.I.L. had approximately $33,455 in Panasonic parts and equipment remaining. (Exhibit 5, Ans. No. 4.)
9. On August 16, 1994, M.I.L.’s attorney sent MECA a letter pursuant to G.L.c. 93A, in which he demanded that MECA “repurchase the entire existing inventory of M.I.L. Electronics forthwith.” (Exhibit 11.) By a letter dated August 24, 1994, MECA rejected M.I.L.’s demand. (Exhibit 12.) M.I.L. filed the present action against MECA, alleging a violation of G.L.c. 93A, on September 22, 1994.
RULINGS OF LAW
I.
“In the absence of a conflict with public policy, Massachusetts honors choice-of-law provisions in contracts ...” Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Company, 986 F.2d 607, 610 (1st Cir. 1993), citing Morris v. Watsco, Inc., 385 Mass. 72 (1982). The dispute between M.I.L. and MECA “is essentially a private one” with “no third-party effects.” Northeast Data Systems, Inc., supra at 610 (citation omitted). The court therefore concludes that the New York “applicable law” provision contained in Paragraph 16 of the Agreement does not conflict with public policy and is enforceable.
In Worldwide Commodities, Inc. v. J. Amicone Co., 36 Mass.App.Ct. 304 (1994), the Appeals Court held that a choice of foreign law provision in a contract barred the application of Massachusetts’ G.L.c. 93Ato matters addressed by the contract. Id. at 308. In Computer Systems Engineering, Inc. v. Quantal Corp., 571 F.Supp. 1365 (D. Mass. 1983), aff'd 740 F.2d 59 (1984), Judge Keeton opined that the decision of whether to apply G.L.c. 93A or the law of the foreign state governing the parties’ agreement “should depend on whether contract-like or instead tort-like elements of the ch. 93A claim predominate on the facts of the particular case.” Id. at 1370-71.
Although M.I.L. has not alleged that MECA or MSC breached the Agreement, M.I.L.’s G.L.c. 93A, §11 claim arises out of MSC’s failure to buy back M.I.L.’s complete inventory of MECA parts and equipment. MSC’s obligation in this regard is explicitly addressed in the Agreement. Thus, because “contract-like” elements predominate on the facts of this case, Computer Systems Engineering,. Inc., supra at 1370-71, M.I.L.’s G.L.c. 93A claim is barred by the Agreement’s choice of foreign law provision.
II.
Even assuming arguendo that M.I.L.’s G.L.c. 93A claim is properly before the court, the court concludes that MSC’s conduct in this matter does not “attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce,” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979), because the Agreement explicitly provides that MSC had the “option” to repurchase “all or any part” of M.I.L.’s inventory.
M.I.L. contends, however, that the provision in question is unconscionable and oppressive, and therefore, should not be enforced. “Unconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party and not to allocation of risk because of ‘superior bargaining power.’ ” Waters v. Min Ltd., 412 Mass. 64, 68 (1992), quoting Zapatha v. Dairy Mart. Inc., 381 Mass. 284, 292-93 (1980).
*174 In the present case, the “provision was neither obscurely worded, nor buried in the fine print of the contract.” Zapatha, supra at 294. Moreover, the provision was not “so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.” Zapatha, supra at 292, quoting Official Comment 1 to U.C.C. §2-302.
Rather, M.I.L. is a sophisticated business entity and, as such, should not have been surprised when MSC refused to perform any acts beyond those required in the Agreement. The court therefore rejects M.I.L.’s contention that the portion of the Agreement giving MSC the absolute discretion to purchase any or all of M.I.L.’s remaining inventory is unconscionable.
Because the court concludes that the Agreement is valid and enforceable, MSC’s actions, in strictly complying with the provisions of the Agreement, are not “immoral, unethical, oppressive, or unscrupulous ...” Levings, supra at 504, quoting 29 CFR 8325, 8355 (1964). Thus, in the absence of any evidence in the record that MSC engaged in unfair or deceptive trade practices in the course of its dealings with M.I.L., the defendant is properly entitled to judgment in its favor on the G.L.c. 93A, §11 claim.
ORDER
For the foregoing reasons, the defendant Matsushita Electric Corporation of America is entitled to entry of judgment in its favor in this action.