FRAMINGHAM SAVINGS BANK *vs.* STEVEN TURK & another.[1]

No. 94-P-1955.

Middlesex. February 22, 1996. - May 1, 1996.

Present: KASS, KAPLAN, & GREENBERG, JJ.

*Mortgage,* Foreclosure, Action for deficiency. *Statute,* Construction. *District Court,* Appellate Division.

A bank that foreclosed on two mortgages and brought actions to recover deficiencies due on the loans the mortgages secured was not entitled to maintain the actions where it had not given the defendants the prior written notice of intent mandated by G. L. c. 244, § 17B. [385-387]

CIVIL ACTION commenced in the Natick Division of the District Court Department on March 5, 1993.

The case was heard by *Edward M. Viola,* J.

*Stephen J. Kenney* for the defendants.

*Peter S. Brooks* for the plaintiff.

KASS, J. After Framingham Savings Bank (FSB or the bank) foreclosed on two mortgages given by Gary Turk and Steven Turk, respectively, it brought actions in the District Court to recover deficiencies due on the loans that the mortgages had secured. The bank did so without having given prior written notice of its intent to pursue deficiencies, as prescribed by G. L. c. 244, § 17B. A judge of the District Court, having found the deficiencies to be $68,604.60 for Steven and $60,096.05 for Gary, ruled that, although FSB had not given the statutory notice, the brothers Turk each had received actual oral notice of FSB's plan to pursue the deficiencies prior to the foreclosures, and that, therefore, FSB was entitled to maintain the deficiency actions. The Appellate

---

[1]Gary Turk. Fleet Bank of Massachusetts, successor in interest to Guaranty First Trust Company and Natick Federal Savings Bank, is joined in the action as a defendant in an action for trustee process.

Division for the Northern District reviewed the judgment, determined that there was no error, and dismissed the report. From that decision Gary Turk and Steven Turk have appealed to this court. We reverse.

These are the background facts. On June 5, 1987, Steven and Gary Turk each purchased a condominium unit at the Normandy Arms Condominium in Framingham. FSB advanced the necessary financing, and the brothers each executed a promissory note and a mortgage as security.[2] By June, 1991, the Turks each had defaulted on his obligation to pay mortgage debt installments. FSB provided each with a notice of his default and the bank's exercise of the acceleration clause in the note. In September, 1991, Steven Turk, his lawyer (who also represented Gary Turk), bank officers, and counsel for the bank met to talk about the defaulted loans. At that meeting, the Turks offered to give deeds of the condominium units to the bank in lieu of foreclosure. FSB rejected the offer and informed the Turks that it intended to foreclose and "would not waive [its] right to any deficiency in the amounts owed [FSB] after that foreclosure sale." FSB, however, never gave the Turks *written* notice of its intent to pursue the deficiencies. The foreclosures that ensued on June 4, 1992, yielded substantially less than the note balances.

So far as material, G. L. c. 244, § 17B, as inserted by St. 1945, c. 604, § 1, provides:

> "No action for a deficiency shall be brought . . . by the holder of a mortgage note or other obligation secured by mortgage of real estate after a foreclosure sale by him . . . unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant sought to be charged with the deficiency at his last address then known to the mortgagee, together with a warning of liability for the deficiency, in substantially the form below, not less than twenty-one days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to, within thirty days after the foreclosure sale, of the mailing of such notice. A notice mailed as

---

[2]The original principal amount of Steven Turk's note was $76,000. The original principal amount of Gary Turk's note was $68,800.

aforesaid shall be sufficient notice, and such an affidavit
made within the time specified shall be prima facie evi-
dence in such action of the mailing of such notice . . . ."

FSB argues that actual notice, which the Turks stipulate
they received at the September, 1991, meeting, is sufficient to
fulfill the requirement of G. L. c. 244, § 17B. We are of
opinion that neither the statutory language, including that
contained in G. L. c. 244, § 17C, nor the discussion in the
cases of the purposes of § 17B supports the conclusion for
which FSB contends.

The statute has uniformly been recognized as a protection
for those parties who may be judged liable for a deficiency af-
ter a foreclosure under a power of sale. Once notified of pos-
sible liability, a party could attempt to protect its interests at
the foreclosure sale, e.g., the party might take steps to stimu-
late bidding or might redeem or purchase the property.
*Palumbo* v. *Audette,* 323 Mass. 559, 560-561 (1949). *Seronick*
v. *Levy,* 26 Mass. App. Ct. 367, 373 (1988). *IAG Fed. Credit
Union* v. *Laterman, ante* 116, 117 (1996). Indeed, the statute
has been described as "a condition precedent" to a deficiency
action, having the practical effect, when read with the
nonwaiver provision of G. L. c. 244, § 17C, of treating a
foreclosure sale as a complete discharge of the mortgage debt,
thwarting a postforeclosure deficiency judgment, absent statu-
tory notice of intent to pursue a deficiency. *Guempel* v. *Great
American Ins. Co.,* 11 Mass. App. Ct. 845, 850-852 (1981).

Section 17C of G. L. c. 244, together with the opinions in
*Wornat Dev. Corp.* v. *Vakalis,* 403 Mass. 340, 345 (1988), and
*Federal Deposit Ins. Corp.* v. *Henry,* 818 F. Supp. 452, 455
(D. Mass. 1993), reinforce the view that the sending of a
written notice under § 17B is a prerequisite to maintaining
an action for a deficiency on a mortgage note, unfettered by
assertions of actual notice, and the evidentiary complications
attendant on proving whether unwritten notice was given,
was received, was understandable as a declaration of inten-
tion to pursue a deficiency judgment, and was reasonably
understood as such. By the terms of § 17C, the provisions of
§ 17B, i.e., the requirement of a written warning of liability
for a deficiency, "shall not be waived, and any agreement to
waive them . . . before suit is commenced shall be void."
G. L. c. 244, § 17C, inserted by St. 1945, c. 604, § 1. We

read § 17C as evincing legislative intent that the giving of the § 17B notice is more than just the norm, but is an indispensible condition of an action for a deficiency after foreclosure under power of sale. In the *Wornat* and *Federal Deposit Insurance Corp.,* opinions, the courts remarked on the importance of written notice in connection with a mortgage foreclosure sale and the absence of need for such a notice when the foreclosure proceeds through entry and possession in accordance with G. L. c. 244, §§ 1 and 2. In the latter form of foreclosure, no deficiency is ever established and no deficiency action is, therefore, possible because the mortgagee snuffs out the equity of redemption by three years of possession, without establishing any sale price to demonstrate that the mortgagee has realized more or less than the mortgage balance. Hence the § 17B notice is required only in cases when a foreclosure sale may establish a deficiency — but in that case the notice is a must.

The statutory language of G. L. c. 244, § 17B, is more than ordinarily prescriptive, i.e., "[*n*]*o action* for a deficiency *shall be brought . . . unless* a notice in writing . . . has been mailed . . . in substantially the form below" (emphasis supplied). Compliance with the statute is not burdensome. Section 17B goes so far as to set out texts of a form of notice and form of affidavit of notice that will satisfy the statute's requirements. The purpose of the statute, as observed in some of the cases we have discussed, is protective of mortgagors. We think that accepting unwritten expressions of intent to foreclose and to pursue a deficiency (or even written notices that deviate substantially from the statutory model) would subvert that purpose.

When reviewing a decision of the Appellate Division, we may make such order as that court ought to have made. *Worldwide Commodities, Inc.* v. *J. Amicone Co.,* 36 Mass. App. Ct. 304, 308 (1994). The judgment of the District Court is reversed; judgments shall be entered in favor of the defendants Gary Turk and Steven Turk.

*So ordered.*