Sargent D. NICHOLS, Individually and as He is Trustee of Andover Northway Realty Trust, Charles MacGill, and Allan R. Ball, Plaintiffs, Appellants,

v.

The CADLE COMPANY, Defendant, Appellee.

No. 97–1518.

United States Court of Appeals, First Circuit.

Heard Nov. 3, 1997.

Decided March 18, 1998.

---

Gilbert R. Hoy, Jr. with whom Law Offices of Gilbert R. Hoy, Jr., Chestnut Hill, MA, was on brief, for appellants.

Alvin S. Nathanson with whom Shannon M. Fitzpatrick and Nathanson & Goldberg, P.C., Boston, MA, were on brief, for appellee.

Before SELYA and BOUDIN, Circuit Judges, and DOWD,* Senior District Judge.

BOUDIN, Circuit Judge.

On December 21, 1990, the Andover Northway Realty Trust executed a promissory note with installment payments in favor of the Woburn Savings Bank and secured it by giving the bank a mortgage on property the trust had purchased in Peabody, Massachusetts. The note was for $3.28 million for one year with installments of $30,969.40 to be paid each month and the balance due at year's end. Three individuals—Messrs. Nichols, MacGill, and Ball—gave the bank personal guarantees on the note.

In July 1991, the Federal Deposit Insurance Corporation became the receiver for the bank. In December of the same year, the note matured but was not paid. In March 1994, the FDIC sold the note, the mortgage, and the personal guarantees to the Cadle Company for $1.1 million. At this point, the

* Of the Northern District of Ohio, sitting by designation.

note was in default, and unpaid interest was continuing to accumulate. The trust now began to make regular payments of $21,000 a month to Cadle, apparently approximating rents the trust was collecting.

Several months later, in May 1994, in a complex multi-step transaction, Cadle transferred possession of the note and mortgage to Foothill Capital Corp. to secure a loan from Foothill. Although there was in form an assignment of the mortgage and note to Foothill, it was qualified by the loan agreement which, among other things, purported to reserve to Cadle the responsibility to collect on the note and (if necessary) to foreclose on the mortgage.

In April 1995, after a year of monthly payments of $21,000 by the trust and efforts by it to refinance, Cadle sent the trust a notice of intent to foreclose and a deficiency notice. In May 1995, a foreclosure sale was held pursuant to a power of sale in the mortgage and Cadle purchased the property for $2.45 million. In June 1995, the trust and the three guarantors (hereafter, collectively, "the trust") brought suit against Cadle in state court, attacking the foreclosure on multiple grounds. Two are pertinent here:

One theory is that Cadle had earlier made—and then breached by foreclosure—an alleged oral agreement between Cadle and the trust to forbear from foreclosure, so long as the trust paid $21,000 per month; the trust said that the agreement also obligated Cadle to accept $2.5 million in full payment if and when the plaintiffs could raise the money. The other theory is that Cadle's foreclosure was unlawful because, by the time of the notice and foreclosure, Cadle had assigned the mortgage to someone else (Foothill) and had no right to foreclose and collect the deficiency in its own name.

Cadle removed the action to federal court and counterclaimed against the trust for unpaid principal and accumulated interest on the loan. In due course, the district court on summary judgment rejected the trust's claim that because of the assignment Cadle could not foreclose on the mortgage; but it reserved for the jury the question whether foreclosure was independently barred by a forbearance agreement, as alleged by the trust but denied by Cadle.

In October 1996, the case was tried to a jury. Cadle claimed to be owed $1,310,560.55 in outstanding principal and interest, after deducting the $2.45 million received at the foreclosure sale and the $21,000 monthly payments (which Cadle treated as an offset to interest otherwise due). The trust claimed that at most it owed $50,000: the $2.5 million set by the alleged forbearance agreement as the final payment, less $2.45 million received by Cadle on foreclosure.

The jury returned a verdict in favor of Cadle, and against the trust, for $603,000. The trust moved for a new trial on the ground that the verdict was an irrational compromise. The district court heard argument and denied the motion. The trust has now appealed, challenging both Cadle's right to foreclose and the damage award. Cadle has not objected to the jury award, although it is less than half of what it claimed to be owed.

■ The trust's first argument is that the foreclosure was invalid under Massachusetts law. Massachusetts permits a mortgagor's equity to be cut off immediately by a foreclosure sale where (as here) that power was stipulated in the mortgage. Mass. Gen. L. c. 244, § 14. Section 14 permits the power of sale to be exercised by

> [t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person....

A companion provision, Mass. Gen. L. c. 244, § 17B, permits a deficiency judgment if prior notice of foreclosure was given by the mortgagee.

It was Cadle that gave notice of and purported to undertake the sale. The trust says that when these events occurred, Cadle was no longer the mortgagee because it had assigned the mortgage to Foothill and therefore had no authority to give notice or exercise the power of sale. A post-sale reassignment by Foothill to Cadle, says the trust,

came too late. For both legal propositions, plaintiffs cite *Lamson & Co. v. Abrams*, 305 Mass. 238, 25 N.E.2d 374, 376–77 (1940). And *Framingham Savings Bank v. Turk*, 40 Mass.App.Ct. 384, 664 N.E.2d 472, 474, *review denied*, 422 Mass. 1110, 665 N.E.2d 1003 (1996), is cited to show that section 17B is strictly enforced, requiring notice in the name of the mortgagee.

If "ownership" of the mortgage and note had been transferred to Foothill, *Lamson* and *Turk* might well control. It is clear enough (as we will explain) that Foothill intended Cadle to manage the mortgage; but under the language of section 14 just quoted, Massachusetts has restricted those who may foreclose to "the mortgagee" and certain others, and it is by no means clear that Cadle, if not deemed the mortgagee, could be squeezed into the remaining categories. So, too, notice under section 17B must be in the mortgagee's name.

Cadle counters that the "assignment" of the mortgage and note to Foothill were merely "conditional" and intended to create a security interest, that Foothill had no right to dispose of either unless Cadle defaulted, and that Cadle remained responsible for administering the mortgage and note, expressly including the responsibility for foreclosing the mortgage in its own name if this became necessary. The language of the Foothill–Cadle loan agreement bears out this description of the transaction.[1]

The more difficult question is whether this is enough: in *Lamson*, too, the mortgage was merely pledged to secure a loan and there was even vague language empowering the borrower to "realize" on collateral. *See Lamson*, 25 N.E.2d at 377. To meet the explicit wording of sections 14 and 17B, and to fully distinguish *Lamson*, it would be necessary to say that Cadle's pledge in this case was so restricted that formal "ownership" of the mortgage remained in Cadle's hands at the time of the foreclosure.

Neither side has given us any case law, beyond *Lamson*, to resolve the question of how much "ownership" is enough. The Foothill–Cadle loan agreement obviously splin-

tered rights that, taken together, comprise "ownership" of the mortgage; and to further complicate matters, the mortgage is a Massachusetts creation, but the loan agreement purports to be governed by California law. Nor have we been given any hint of any other possible implications of treating ownership as retained by Cadle or passed to Foothill.

Absent more enlightenment, we are content to treat the loan agreement as leaving Cadle as the mortgagee. The parties to the agreement clearly intended that Cadle retain authority to foreclose; and while this standing alone would arguably not be enough, the agreement limited Foothill's rights over the mortgage to something less than the ordinary full "ownership" of a mortgage. Notably, Foothill could not sell the mortgage, absent an act of default by Cadle, so the assignment itself was significantly qualified—even assuming that it were deemed operative at once and not merely an assignment conditioned on an event that had not yet occurred.

Further, there is no indication that the trust relied in any way, to its detriment, on the belief that Cadle was no longer the owner of the mortgage. No assignment of the mortgage to Foothill had been recorded prior to the foreclosure and, according to the trustee's affidavit, the trust knew nothing about the Foothill–Cadle loan. The trust has not shown any respect in which it has been disadvantaged by having Cadle, rather than Foothill, give notice and conduct the foreclosure. We see no risk that any injustice is done here by respecting the mortgage foreclosure, rather than trying to unwind the transaction and requiring Cadle as the reassignee to start all over.

■ We turn now to the trust's other major claim of error on this appeal. The gist is that the damage award is irrational and can only be explained as a compromise on liability. In the trust's view, the parties put two alternative theories before the jury—one theory (the trust's) supporting an award of $50,000 on Cadle's claim and the other theory (Cadle's) supporting an award of $1.3 mil-

---

1. *Lamson*, among other Massachusetts cases, confirms that the assignment and loan agree- ment are to be read together. *See Lamson*, 25 N.E.2d at 375–76.

lion—but nothing permitted a rational jury to award $603,000.

After the jury delivered its verdict of $603,000, the trust moved for a new trial. The district court denied the motion, pointing out that its instructions had not confined the jury to a choice of two figures; in fact, the transcript shows that the judge told the jury that the "range" of possible damages lay between $50,000 and $1.3 million. Neither side objected to this instruction.

■ Ordinarily, a district court's denial of a motion for a new trial is reviewed only for "abuse of discretion," *see Abraham v. Nagle,* 116 F.3d 11, 15 (1st Cir.1997), but there is also a settled hostility toward "compromise" verdicts.[2] The term is mainly used where there is clear indication that the jury could not agree on liability and settled the matter by awarding only a portion of the damages that liability should have entailed. Reductions in damages for other reasons are more readily tolerated.

The appellate decisions show a marked tendency to give great weight to the district court's assessment *whether* the verdict reflects an improper compromise. *See, e.g., Raynor Bros. v. American Cyanimid Co.,* 695 F.2d 382, 385 (9th Cir.1982). There are good reasons for this view: the district court has a far better sense of what the jury likely was thinking and also whether there is any injustice in allowing the verdict to stand. Here, we have no intention of disturbing Judge Young's decision not to order a new trial, and are influenced by three different considerations.

First, the evidence of the trust's debt was overwhelming and the evidence of a forbearance agreement seems to us modest. While the latter issue was properly submitted to a jury, nothing in the evidence suggests to us that on liability the jury was faced with the kind of knife-edge issue likely to preclude a unanimous decision and foster compromise. Nor are there other indicia of improper compromise that have sometimes troubled the courts. *See, e.g., Skinner v. Total Petrole-*

*um, Inc.,* 859 F.2d 1439, 1445–46 (10th Cir. 1988).

Second, although the trust did not expressly urge that the $1.3 million figure should be reduced by any offsetting costs to the trust or advantages conferred on Cadle, there was testimony from trust witnesses concerning the extensive time spent by the trust in managing the property (partly for Cadle's benefit), on the below face-value price ($1.1 million) paid by Cadle to the FDIC for the note and mortgage, and on similar matters. While no one has been able to reconstruct the $603,000 figure precisely, the jury could easily have done its own whittling down on the basis of such evidence.

Third, a review of the closing arguments shows that numerous figures were thrown at the jury by both sides for various purposes; one can find brief mention of the two figures now said to be the sole rational alternatives for damages ($1.3 million and $50,000), but only as part of a cloud of ill-explained numbers. Nor, as noted, did either side object to the judge's reference to a "range." It would thus take a lot to justify setting to work a second jury to repair a muddle for which the parties are largely responsible.

Cadle is mistaken in arguing that only it can complain because it received less than it deserves: if the trust could show an improper compromise on liability, then Cadle would deserve nothing at all from *this* jury. *See Stetson v. Stindt,* 279 F. 209, 211 (3d Cir. 1922). But it is the trust's obligation to show that such a compromise occurred. It failed to persuade the district judge and, assuming *dubitante* that we would readily intervene in such an instance, *cf.* James & Hazard § 7.21, at 394, we too are unpersuaded.

■ There is a final issue, raised late in the day, that needs to be addressed briefly. In the district court, Cadle submitted a copy of the loan agreement to support its contention that the assignment of the mortgage and note were qualified by that agreement. The agreement had an annex identifying numer-

**2.** Numerous cases on the question of compromise verdicts are collected in two of the leading treatises. *See* 11 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 2810, 2814, at 106–07, 155 (2d ed.1995), *and* F. James & G. Hazard, *Civil Procedure* § 7.21, at 391–95 (3d ed.1985).

ous notes to which it applied including the note pertaining to the Peabody property of which the trust is the mortgager. But apparently due to a collating error, the annexed pages that listed this property were mistakenly omitted from the version supplied to the district court and to the trust.

Cadle, the trust, and the district judge all appear to have proceeded in ignorance of this clerical error. Cadle took the position that the assignment was qualified by the agreement, the trust argued that Massachusetts law made the agreement irrelevant, and the district judge sided with Cadle. Even in this court, the trust's opening brief made no claim that the agreement did not encompass the note and mortgage on the Peabody property.

Instead, the trust made such argument for the first time in its *reply* brief in this court. Cadle immediately furnished the missing page and moved to strike the trust's argument on that point in the reply brief on the ground that the issue was waived. In our view, the trust's objection to the failure to furnish the pertinent page has been waived twice over, first by omitting to call it to the attention of the district judge (when it could easily have been remedied) and then by failing to include the point in the trust's opening brief in this court. *See Sandstrom v. Chem-Lawn Corp.*, 904 F.2d 83, 87 (1st Cir.1990).

Nevertheless, if there were any genuine factual issue, we might well be disposed to remand the case to clear up the dispute. But the trust does not even hint, either in its reply brief or in its opposition to the motion to strike, that the annex page now supplied to us by Cadle is either inauthentic, inaccurate, or a forgery. The objection is purely technical. Under these circumstances we think the waiver doctrine resolves the matter and treat Cadle's motion to strike as moot.

*Affirmed.*

---

**3.** I am sympathetic to the problems that arise in a system in which a foreclosure proceeding can be done in a nonjudicial manner. In Ohio, my home state, the laws would not allow for this type of extrajudicial foreclosure proceeding, and thus, this particular problem could have been addressed in the more customary judicial proce-

DOWD, Senior District Judge, dissenting.

The action before us today is primarily a foreclosure proceeding. As such, it directly affects the ownership of, and title to real estate by providing a procedure by which the owner, and his or her heirs, may be stripped of their land. As foreclosure proceedings are inherently creatures of state law, the instant diversity case requires the application of the state law of Massachusetts, which provides for extrajudicial foreclosure proceedings, from which this situation arose.[3]

My colleagues affirm the district court's grant of summary judgment in this case, concluding the loan agreement reserved in Cadle the right of a mortgagee to maintain the foreclosure proceeding here in question. The majority acknowledges that the "collating error" made by Cadle at the district and appellate court levels resulted in the omission of the Trust Note from the list of those notes for which Cadle reserved the right to foreclose. While the majority is able to move past this error, I hold to the position that this omission should not be overlooked, especially here, where this omission resulted in a record which does not support Cadle's ability to maintain a foreclosure proceeding. I find that due to the omission of the Trust Note, Cadle did not have a mortgage interest in the Andover Trust property, and thus, under Massachusetts foreclosure law, the foreclosure proceeding is invalid. Thus, I respectfully dissent.

This case comes to us as an appeal of a grant of summary judgment. As such, the standard of review is "de novo." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank*, 122 F.3d 88, 89 (1st Cir.1997). Under this standard, it is proper for the court of appeals to make an independent review of the documents, and the entire record, involved in the case.

In the instant case, this independent review of the documents at issue is especially important, as the record does not provide an

---

dure. However, because such procedure is allowed here, it must be followed according to the law, and that requires allowing only a "mortgagee" to foreclose. As explained herein, I find that the proper procedure for a nonjudicial foreclosure was not followed here, and for this reason do not join the majority opinion.

indication of the district court's reasons for granting the summary judgment. A review of the record reveals that the district court held a hearing for the purpose of resolving the motion for summary judgment. The parties argued their positions, and at the conclusion of the hearing, the district court stated its ruling that Cadle had a mortgage interest. However, the district court did not, either orally or in a subsequent written opinion, explain its reasons for this holding. As a result, it is impossible for a reviewing court to now determine whether the district court considered all of the documents involved, or to review the district court's reasons for its interpretation of the documents that it did consider.[4] For this reason, the court of appeals' task of a de novo review of the grant of summary judgment is especially important in this case.

The assignment agreement is the first document that must be examined in this transaction.[5] The relevant portion of the assignment from Cadle to D.A.N., and then from D.A.N. to Foothill, reads as follows:

> THAT FOR VALUE RECEIVED, The Cadle Company, ... ("Assignor") does hereby grant, bargain, sell, convey, endorse, deliver, assign and transfer to D.A.N. ... as grantee ("Assignee"), its successors and assigns, *without recourse, all of the right, title and interest of Assignor in and to the mortgage* "(Mortgage") ... further described on Exhibit A attached hereto and which encumbers the real property legally described on Exhibit B attached hereto and the note ("Note") and claim evidenced and/or secured thereby and all other documents, instruments and agreements and collateral securing the indebtedness evidenced by said Note.

(JA at 83, 88) (emphasis added). The Andover Trust mortgage involved in this case is clearly listed on "Exhibit A" of these assignment agreements. (JA at 86). With this document, Cadle assigned all the interest it held as a mortgagee in the Andover Trust note and mortgage to Foothill. As a result, Cadle was no longer a mortgagee, and could not maintain foreclosure proceedings. *Lamson & Co. v. Abrams,* 305 Mass. 238, 25 N.E.2d 374, 375–76 (1940) (on assignment of mortgage, assignor cannot maintain foreclosure proceedings). Foothill, as the assignee, became the sole mortgagee, and thus the sole party with the authority to maintain foreclosure proceedings. *Id.*

However, there is another document that must be considered in conjunction with this transaction. The loan agreement between Cadle and Foothill was executed on the same day as the assignment agreement. This loan agreement states that, with regard to certain defined "Pledged Notes," Cadle reserves for itself the right to collect on the Pledged Notes and, if necessary, foreclose on the mortgages: "all notices of default to be sent to the makers of the Pledged Notes, shall be sent in the name of [Cadle], unless otherwise required by law." (JA at 284). With this document, Cadle attempted to reserve in itself the rights of a mortgagee despite the assignment of these rights to Foothill. However, a review of the list of "Pledged Notes" referenced in the loan agreement reveals that the Andover Trust note at issue in this

---

**4.** The transcript of the hearing on the summary judgment motion is very short (16 total pages). (Joint Appendix ["JA"] at 371–86). A review of the transcript indicates that the majority of time was spent arguing about the existence of the forbearance agreement, rather than arguing about the validity of the foreclosure. When the foreclosure itself was discussed, however, counsel for the appellant focused on the assignment agreement rather than the loan and security agreement. *Id.* at 373–75. Appellant's counsel argued primarily that the assignment agreement was unconditional on its face, and therefore the loan and security agreement was not applicable to this transaction. *Id.* Appellee's counsel then painted a picture of the transaction that included both documents, and described Cadle's view that

the documents were intended to work together to be a conditional assignment, reserving in Cadle the right to foreclose. *Id.* at 381–383. The district court then stated that "On this one I think I have an adequate record, at least in part,.... I rule that Cadle does have a mortgage interest." *Id.* at 383.

**5.** As the majority recognizes, this was a "multi-step" transaction. Initially, Cadle executed this assignment in favor of D.A.N. Joint Venture II, A Limited Partnership ("D.A.N."), of which Cadle is the general partner. Immediately thereafter, D.A.N. assigned the same property to Foothill, using the identical words of assignment.

case is absent. (JA at 315–20).[6] Additionally, it was absent from the copy of the loan agreement which was before the district court, and the copy that was given to the Trust by Cadle. Therefore, the Andover Trust note is not among those that Cadle may foreclose upon in the event of default.

The majority acknowledges this sequence of events, but does not find it problematic due to the fact that to this court, Cadle presented new pages of the loan agreement which include the Trust Note, along with an explanation that it was a mere "collation error" that led to the previous inclusion of the incorrect pages. Cadle presented these pages as a result of the argument raised by the Trust in their Appellate Reply brief that the Trust Note was not included in the loan agreement. It is this timing that the majority finds important. The majority holds that the Trust waived this argument by failing to bring it up at the district court level or in its opening brief in this court. Therefore, the majority concludes, despite the fact that the record presents this problem, it is obvious that the parties all believed that the Trust Note was included in the loan agreement, or else they would have made this argument before.

It is precisely this rationale that I cannot join. As an appellate court, we are required to review the record, and if the record does not support the result reached by the district court, we must not affirm. I cannot join the majority's application of the doctrine of waiver here because, despite the absence of this argument at the district court, I cannot now conclude from the record that all parties knew and intended the loan agreement to include the Trust Note. Furthermore, although the Trust did not always maintain that the Trust Note was not included in the loan agreement, the Trust has always maintained that the foreclosure was invalid and that the assignment agreement was unconditional. To refute this allegation, Cadle pro-

duced the loan agreement, arguing that it reserved in Cadle the right to conduct this foreclosure. This document was therefore placed before the district court, with the absence of the Trust Note.

The fact that the Trust now argues an additional reason why the foreclosure is invalid does not change the Trust's original argument that the foreclosure is invalid. What we must review is whether, given all the documents that were before the district court, we can affirm the decision that Cadle was the mortgagee, and thus able to conduct foreclosure proceedings on the Trust property. I find that it is improper for us to excuse the gap in the record on a mere belief that the parties and the district court judge all understood that the loan agreement applied and included the Trust Note. While it may turn out that the loan agreement did apply, and that the mistake was merely a "collating error," this is not the sort of a leap of faith that an appellate court should make.

In conclusion, due to the questions of fact in the record concerning whether the Trust Note was included in the loan agreement, I am unwilling to agree that Cadle reserved the right to foreclose on the Trust property. I would, therefore, remand to the district court for a determination of whether the loan agreement applies to this transaction, reserving in Cadle the right of a mortgagee to foreclose.[7]

---

**6.** In fact, the only mention of the property at issue in this case appears on Schedule R–1, the "Real Property Security Legal Descriptions." (JA at 321–22).

**7.** As I am dissenting on this basic issue of the validity of the foreclosure, I see no reason to address the secondary issue concerning the amount of the deficiency awarded by the jury.