USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 97-1988 JAMES A. CHUTE, Plaintiff, Appellant, v. SEARS ROEBUCK AND COMPANY and EMERSON ELECTRIC COMPANY, Defendants, Appellees. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. W. Arthur Garrity, Jr., Senior U.S. District Judge]  Before Selya, Circuit Judge,  Bownes, Senior Circuit Judge,  and Boudin, Circuit Judge.   John F. Kehoe with whom Daly, Kehoe & Crosson, L.L.P. was onbrief for appellant. David A. Barry with whom William L. Boesch and Sugarman,Rogers, Barshak & Cohen, P.C. were on brief for appellees. June 1, 1998   BOUDIN, Circuit Judge. James A. Chute was seriouslyinjured when an unknown object, possibly a piece of wood, struck himbelow his left eye. The object was thrown by a "Sears Craftsman"radial arm saw operated by his employees. Chute sued the saw'sseller, Sears, Roebuck & Co., on theories of negligence and breachof warranty in Massachusetts Superior Court. Sears removed the caseto the district court on grounds of diversity, and Chute amended hiscomplaint to add the saw's designer, manufacturer and distributor,Emerson Electric Co., as a defendant. On June 23, 1997, after six days of trial, the jury gavea verdict for the defendants on all counts, and also answered a setof written interrogatories that the district court had submitted. See Fed. R. Civ. P. 49(b). Chute moved for a new trial, arguingthat one of the interrogatories so confused the jury that a newtrial was required. The district court denied that motion on July22, 1997. Chute now appeals, focusing primarily on the challengedinterrogatory (interrogatory 10). The district court gave the jury ten interrogatories inall, the last three of which concerned the breach of warranty claim. These latter three queries were to be answered yes or no, and readas follows: 8. Was the radial saw defective as designed and unreasonably dangerous to someone walking or standing nearby while the saw was in operation?  9. If "Yes," was such defective design a proximate cause of Chute's injury? 10. When Chute was injured, was he acting unreasonably when he walked behind the saw without wearing safety goggles, knowing that the saw was defective and dangerous in that a piece of wood might be ejected at him?The jury answered interrogatory 8 in the negative and did not answerinterrogatories 9 and 10. However, Chute argues that the confusingwording of interrogatory 10 and defects in the district court's jurycharge constrained the jury's freedom to answer interrogatory 8affirmatively. During deliberations, the jury sent the following note tothe district court: If we, the Jury, deem #8 under breach of warranty as 'No.' Do we have to answer #10.  If we do have to answer #10 can we strike the last piece of that statement or not answer at all. We cannot believe Mr. Chute would have knowingly had people working with the saw if he knew it was defective and dangerous.The district court told counsel that the court intended to tell thejury that if it answered interrogatory 8 negatively, it would nothave to answer 9 or 10. The district court also said that it wouldadvise jurors that, should they answer both 8 and 9 affirmatively,they could not strike any portion of 10 but must answer it aswritten. Neither side objected, and the district court soinstructed the jury. The jury returned its verdict less than twentyminutes later. Chute argued in his motion for new trial, and reassertshere, that the jury interpreted interrogatory 10 as requiring it tofind, or at least assume, that the saw was defective and that Chutewas aware of the defect. We know from their note that the jurymembers were unwilling to make the latter finding. Chute arguesthat when the judge said that this last part of interrogatory 10could not be struck, the jury sought a way out of the dilemma byanswering interrogatory 8 negatively, which excused it fromanswering interrogatory 10. The trial court has broad discretion in crafting a jurycharge and interrogatories, but a new trial may be warranted if thecharge is erroneous or tends to confuse the jury on a materialissue, provided that objection was made to the district court afterthe charge and before the jury retired. Fed. R. Civ. P. 51;O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997). If a partyfails to make a timely objection, the instruction is reviewable forplain error only. Cordero v. De Jesus-Mendez, 867 F.2d 1, 5 (1stCir. 1989).  A number of circuits have explicitly held that the plainerror exception, interpolated by case law into Rule 51, applies tojury instructions but not to interrogatories. We recently reviewedfor plain error a forfeited objection to special verdict questionsalthough an earlier case in this circuit could be read to support--but not squarely to adopt--the contrary position adopted by othercircuits. Compare Clausen v. Sea-3, Inc., 21 F.3d 1181, 1196 (1stCir. 1994), with Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968,973 (1st Cir. 1969). It is not clear why the plain error exception should beavailable for jury instructions but not for interrogatories, whichare formulated together with instructions and often interlock withthem. The answer cannot be Rule 51, the language of which appearsto forbid any review of jury instructions absent a timely objectionbut does not say anything specific about interrogatories. We seeno reason for a flat rule that an error in interrogatories can neverbe reviewable under the plain error doctrine, although that standardis very difficult to meet, especially in civil cases.  The four-part standard for plain error review articulatedin United States v. Olano, 507 U.S. 725 (1993), although framed ina criminal case, is normally followed in civil cases as well. See,e.g., Pimentel v. Jacobsen Fishing Co., 102 F.3d 638, 640 (1st Cir.1996). If anything, the standard deserves more stringentapplication to civil jury instructions given Rule 51's notablyexplicit warning of a need to object; unlike objections to evidence,jury instructions are not spur-of-the-moment matters. In allevents, under Olano, the court of appeals will consider a forfeitedobjection only if an error was committed, if the error was "plain"(i.e. clear under current law), if the error was prejudicial, andif review is needed to prevent a miscarriage of justice. Id. at733-37.  The notion that interrogatory 10 contains an "error" atall is at best debatable. If one focuses solely on the words used,the interrogatory appears to contain as an assumption a factualassertion clearly disputed by the defendants, i.e., that the saw wasdefective, and another disputed by the plaintiff, i.e., that Chuteknew of the defect. But when read in conjunction with the juryinstructions, arguably the jury should have understood thatinterrogatory 10 was conditional--to be reached only if the juryfound a defective design and proximate causation underinterrogatories 8 and 9. This is clearer once one reads the instructions and learnsthe reason for interrogatory 10. Its purpose, if the jury found forthe plaintiffs as to defect and causation, was to require the juryto decide whether the defendants had made out an affirmative defenseset forth in detail in the instructions: that "the plaintiff in awarranty action . . . may not recover if . . . after discovering theproduct's defect and being made aware of its danger, he neverthelessproceeded unreasonably to make use of the product and was injuredby it." Correia v. Firestone Tire & Rubber Co., 446 N.E.2d 1033,1041 (Mass. 1983). The jurors were obviously uncertain whether interrogatory10 was contingent, but the district court answered this question byinforming them that it was. We have no reason to think that thejury then ignored the court's instructions to resolveinterrogatories 8 and 9 first and address 10 only if it found forthe plaintiff on those first questions. Whether or not in thiscontext the original interrogatory was "error" at all (still less"plain error") does not matter: it is enough that the clarificationremoves any reason for thinking that the jury was misled or theplaintiff prejudiced. This exercise demonstrates why courts are so unlikely toreverse decisions in civil cases based on unpreserved claims oferror in jury instructions or interrogatories. In an era of crowdeddockets, the idea that the case should be retried because of anawkwardly-drafted interrogatory when counsel had ample opportunityto straighten the matter out is insupportable in any other than themost rare and extreme case. Although Chute's counsel suggested atoral argument that he did preserve the objection, our review of therecord has not revealed it, nor does his brief indicate where itmight be found. Chute presents two further arguments as to whyinterrogatory 10 is defective. One is even less likely to beprejudicial error and was also not raised in the district court, soit is covered by our preceding discussion. The other claim is thatthe affirmative defense of unforeseeable misuse, to whichinterrogatory 10 intended to refer, was not accurately stated underMassachusetts law. Since the jury did not reach the issue after thedistrict court's clarification, any such misdescription was patentlyharmless. Two points remain. The first is an objection, preservedat trial, that opinion testimony given by an expert witness lackedfoundation. We think that allowing the question was within thedistrict court's discretion, but in any event we regard the answeras little more than a rephrasing of an earlier scientific answerthat the expert was unquestionably allowed to give. The secondalleged error, relating to interrogatory 8, was not only forfeitedbelow but also omitted from Chute's opening brief in this court andpresented for the first time in his reply. We decline to addressit. See Nichols v. Cadle Co., 139 F.3d 59, 64 (1st Cir. 1998). Affirmed.