TOWN OF MIDDLEBOROUGH *vs.* MIDDLEBOROUGH GAS &
ELECTRIC DEPARTMENT.

No. 97-P-2030.

Plymouth. March 16, 1999. - September 2, 1999.

Present: KASS, DREBEN, & JACOBS, JJ.

*Waiver. Contract,* Insurance, Waiver. *Subrogation. Insurance,* Subrogation,
Waiver.

A town did not act within a reasonable period of time to attempt, under the
terms of a policy of insurance, to waive its rights of recovery against a
third party for the negligent destruction of a school building, where it
waited more than eight years after the insurer asserted its subrogation
rights and more than six years after the insurer had filed its complaint in
the name of the town against the third party. [656-659]

CIVIL ACTION commenced in the Superior Court Department on
April 16, 1991.

Following the decision of the Supreme Judicial Court in 422
Mass. 583 (1996), a motion for summary judgment was heard
by *John J. O'Brien,* J.

*Roger A. Emanuelson* for the plaintiff.

*Vincent L. DiCianni* for the defendant.

KASS, J. More than a decade ago, on August 8, 1988, the
Henry B. Burkland School in Middleborough, a public school,
was partially destroyed by fire. The town's insurer, United Com-
munity Insurance Company (United), indemnified the town in
excess of $4,000,000 for the cost of rebuilding and re-equipping
the school. By that payment, United, by the terms of its insur-
ance contract with the town, was subrogated to the town's rights
against any person liable for the fire damage. United traced the
fire to a utility pole that had been improperly grounded by
reason of the negligence of Middleborough Gas and Electric
Department (MGED). On April 16, 1991, United filed a
negligence action in Superior Court in the name of the town.

That action worked its way through the trial and appellate courts, culminating in *Middleborough* v. *Middleborough Gas & Elec. Dept.*, 422 Mass. 583 (1996) (*Middleborough I*), which held that the town and MGED were sufficiently distinct so that the town might maintain an action against MGED. It followed that United, standing in the shoes of the town, could maintain that action. Indeed, United was the real party in interest in the litigation. Following publication of the opinion in *Middleborough I* on May 3, 1996, someone seems to have discovered on behalf of the town that an endorsement to the insurance contract with United contained a provision allowing the insured, i.e., the town, to "waive in writing any or all right of recovery against any party for loss." Feeling more affinity with the ratepayers for gas and electricity in Middleborough than for United, the selectmen of Middleborough on July 14, 1997, voted to waive the town's right to recover from MGED losses sustained back on August 8, 1988. This occurred some eight and one-half years after United had informed the town that it was asserting its subrogation rights under the policy and more than six years after United had actually filed its complaint in the name of the town.

On August 25, 1997, with trial scheduled to start on September 15, 1997, MGED moved again for summary judgment,[1] this time on the basis that the town's vote of July 14th had extinguished United's subrogation rights. A judge of the Superior Court allowed the motion, reasoning that as the insured's waiver of rights against MGED was not limited in time, it could be exercised at any time, was valid, and foreclosed the action against MGED. We reverse.

There is no controversy that the town's action satisfied the condition for making a post-loss waiver of recovery, namely, that the waiver could be made only in favor of "a corporation, firm, or entity . . . owned or controlled by the named insured." Although *Middleborough I* established that MGED was a separate legal entity whose utility service area extended beyond Middleborough, MGED, nonetheless, was owned by the town. As to the reach of the town's waiver, one could read the selectmen's vote, set forth in full in the margin,[2] as waiving only rights in any recovery made through the subrogation claim

---

[1]*Middleborough I* had been determined on a motion for summary judgment.

[2]"VOTED: That the Board of Selectmen, on behalf of the Town of Middleborough, waives all right of recovery with respect to the subrogation claim brought in the name of the Town by the Town's former fire insurance company,

brought in the name of the town, i.e., literally waiver of a right to participate in United's recovery. That was a right the town never had, and we take the selectmen's vote for what it was manifestly intended to mean, waiver by the town of the right to recover from MGED.

Carried to its extreme, MGED's position is that the town can extend indefinitely its right to waive recovery against MGED. On this theory, had the town's insurer obtained a jury award or negotiated a settlement in its favor, it was not too late for the town to render the effort a nullity by exercising the waiver of recovery right. We decline to read the contract in a manner that allows the insured to stand by solemnly observing ongoing litigation for more than six years, and then knock the foundation out from under that litigation. Each party had spent large amounts of time and substance litigating whether the town could sue MGED.

The basis for our decision, however, is not an estoppel theory — an approach that involves some difficulty when directed against a municipality. See *McAndrew* v. *School Comm. of Cambridge*, 20 Mass. App. Ct. 356, 360-361 (1985); Randall & Franklin, Municipal Law & Practice § 1973 (4th ed. 1993). Rather, we rest on recognized principles of contract interpretation. Contracting parties intend the provisions in them to be consistent and harmonious with the purpose of the contract. See *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 222-223 (1981); Restatement (Second) of Contracts § 202(1) (1979). Under the contract, i.e., the insurance policy, when there is an at-fault third party, an insurer that has paid damages may recoup its outlay by use of the right of subrogation. This is a standard provision in a casualty insurance contract, as the printed forms used in United's policy illustrate. More generally, casualty policies require an insured to give up the right to recover from a third party *before* the loss has occurred; i.e., post-loss waiver rights are not the norm, 3 Cozen, Insuring Real Property

United Community Insurance Company, against the Middleborough Gas & Electric Department, which claim is the subject of a complaint in the Plymouth County Superior Court, and which relates to losses incurred on August 8, 1988, and that the Board further moves that the Chairman, on behalf of the Board and Town, shall have authority to take all action and execute any and all documents necessary or desirable to implement a waiver of such right of recovery provided by this vote, including, without limitation, executing an agreement with the Middleborough Gas & Electric Department on such terms as the Chairman shall approve."

§ 41.05(2) (1999), albeit expressly provided for in the contract at hand.

Pursuit of the third-party defendant invariably involves expenditure of energy and outlay for investigation, the hiring of experts, the efforts of counsel, laboratory tests, and so forth. If the insured, therefore, wishes to cancel the right of subrogation, that must be done within a reasonable time. Generally, our cases propose a reasonable time restriction on rights exercisable under a written contract, when no express time limitation for exercise of those rights appears in the contract itself. See *Powers, Inc.* v. *Wayside, Inc. of Falmouth*, 343 Mass. 686, 690-691 (1962); *Plymouth Port, Inc.* v. *Smith*, 26 Mass. App. Ct. 572, 575-576 (1988). See also *Eliot Five Cents Sav. Bank* v. *Commercial Union Assur. Co.*, 142 Mass. 142 (1886), a case that is particularly on point. There the defendant, an insurance company, seven months after the plaintiff had brought suit, tendered to the plaintiff, a bank, the amount secured by its mortgage, an election to which it was arguably entitled under the policy. The court held that the tender had not been made within a reasonable time. "If this tender is sufficient," the court wrote, "it must follow that any tender made before judgment in the suit would defeat the plaintiff's right to recover. The result would be to throw upon the plaintiff all the costs and expenses of the suit, which would be unreasonable and unjust." *Id.* at 145-146. So here. See further *Stone* v. *W. E. Aubuchon Co.*, 29 Mass. App. Ct. 523, 527-528 (1990); *Cavanagh* v. *Cavanagh*, 33 Mass. App. Ct. 240, 241-242 (1992); Restatement (Second) of Contracts § 33 comment d (1979); 1 Williston, Contracts § 4:19 (4th ed. 1990).

When, as here, the facts are undisputed, the question of whether an act was done within a reasonable time is a question of law for the court. *Stone* v. *W. E. Aubuchon Co.*, *supra* at 528. See *Bruns* v. *Jordan Marsh Co.*, 305 Mass. 437, 445 (1940). The town was on notice at a very early date of the intent of United to exercise its subrogation rights and, indeed, the town cooperated with United in its action against MGED. The town was aware at that point that United was expending substantial energy to establish the negligence and liability of MGED. It may be that two months after notice from an insurer of intent to pursue subrogation rights may establish the boundary for waiver of a right of recovery which extinguishes that subrogation right. We need not determine definitively the outer limit, but certainly

six and one-half years after the commencement of a subrogation action (considering that the period in which a complaint must be answered is twenty days, Mass.R.Civ.P. 12[a], 365 Mass. 754 [1974]), is beyond a reasonable time for exercising such a waiver of right. Otherwise, there is a burden not only on the party pursuing subrogation rights but there is a substantial imposition on limited judicial resources. This case richly illustrates the point. Prior to the purported waiver of its rights by the town against MGED, the case was litigated in the Superior Court, appealed in the Appeals Court, and finally appealed in the Supreme Judicial Court. We conclude that the town exceeded by a substantial margin the limits of a reasonable period in which it might have waived its right of recovery against MGED.

*Judgment reversed.*